UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MAXIE BARANSKI,

                              Plaintiff,              Civil Action No. 20-12304

v.                                       Nancy G. Edmunds
                                            United States District Judge

COMMISSIONER OF                David R. Grand
SOCIAL SECURITY,              United States Magistrate Judge

                              Defendant.

_____/

## REPORT AND RECOMMENDATION ON
## CROSS-MOTIONS FOR SUMMARY JUDGMENT (ECF Nos. 11, 14)

Plaintiff Maxie Baranski ("Baranski") brings this action pursuant to 42 U.S.C. §

405(g), challenging the final decision of Defendant Commissioner of Social Security

("Commissioner") that she was no longer disabled as of June 22, 2017, and therefore, as

of that date, was no longer entitled to receive the Disability Insurance Benefits ("DIB") she

previously had been awarded under the Social Security Act (the "Act").  Both parties have

filed summary judgment motions (ECF Nos. 11, 14), which have been referred to this Court

for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B).

## I.    RECOMMENDATION

For the reasons set forth below, the Court finds that substantial evidence supports

the Administrative Law Judge's ("ALJ") conclusion that Baranski has not been disabled

under the Act since June 22, 2017.  Accordingly, the Court **RECOMMENDS** that the

Commissioner's Motion for Summary Judgment **(ECF No. 14)** be **GRANTED**, Baranski's

Motion for Summary Judgment **(ECF No. 11)** be **DENIED**, and that, pursuant to sentence four of 42 U.S.C. § 405(g), the ALJ's decision be **AFFIRMED**.

## II.   REPORT

### A.   Background

Baranski was 29 years old at the time of her alleged onset date of September 23, 2013.  (ECF No. 9-5, PageID.244).  At 5'5" tall, she weighed approximately 208 pounds during the relevant time period.  (ECF No. 9-6, PageID.267).  She completed high school and took some college classes.  (ECF No. 9-2, PageID.82).  Her past relevant work includes fast food worker, fast food manager, line worker (plastics), and retail clerk.  (*Id.*, PageID.84-87).  She now primarily alleges impairments of lymphedema, bulging discs, melanoma surveillance, breast cysts, and depression.  (ECF No. 9-6, PageID.267; ECF No. 9-4, PageID.165).

In a decision dated December 16, 2013, Baranski was found disabled beginning on September 23, 2013, based on her impairment of a metastatic melanoma to the lymph nodes.  (ECF No. 9-2, PageID.59, 61; ECF No. 9-4, PageID.165).  On continuing disability review, however, it was determined that Baranski was no longer disabled since June 22, 2017.  (ECF No. 9-3, PageID.133, 136-39).  This determination was upheld on reconsideration after a disability hearing by a state agency disability hearing officer.  (ECF No. 9-4, PageID.165-75, 178-89).  Thereafter, Baranski timely requested an administrative hearing, which was held on May 31, 2019, before ALJ Christopher J. Mattia.  (ECF No. 9-2, PageID.76-111).  Baranski, who was represented by attorney Lorenzo D'Agostini, testified at the hearing, as did vocational expert ("VE") Melody Henry.  (*Id.*).

On September 5, 2019, the ALJ issued a written decision finding that Baranski was no longer disabled as of June 22, 2017, and therefore, as of that date, was no longer entitled to receive DIB.  (*Id.*, PageID.59-69).  On July 7, 2020, the Appeals Council denied review. (*Id.*, PageID.45-50).  Baranski timely filed for judicial review of the final decision on August 26, 2020.  (ECF No. 1).

The Court has thoroughly reviewed the transcript in this matter, including Baranski's medical record, disability reports, and testimony as to her conditions and resulting limitations during the relevant time period.  Instead of summarizing that information here, the Court will make references and provide citations to the transcript as necessary in its discussion of the parties' arguments.

**B.    The ALJ's Application of the Disability Framework Analysis**

Under the Act, DIB are available only for those who have a "disability."  *See Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007).  The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).

Under the eight-step continuing disability review process for DIB recipients, the ALJ must determine at Step One whether the beneficiary engaged in substantial gainful activity at any time after the onset date; at Step Two, whether the beneficiary has an impairment or combination of impairments that meets or medically equals a listed impairment; at Step Three, whether the beneficiary experienced medical improvement; at

3

Step Four, whether the medical improvement was related to the beneficiary's ability to do work; at Step Five, whether an exception to medical improvement applies; at Step Six, whether the beneficiary's current impairments in combination are severe; at Step Seven, whether the beneficiary can perform her past relevant work in light of her current residual functional capacity ("RFC"); and at Step Eight, whether the beneficiary's RFC allows her to perform other work existing in significant numbers in the national economy. *See* 20 C.F.R. § 404.1594(f). "[T]he Commissioner bears the burden of proof at each of these steps." *Delacotera v. Berryhill*, No. 3:16-cv-01464, 2017 WL 971935, at *3 (M.D. Tenn. Mar. 14, 2017). "There is no presumption of continuing disability," and "[i]nstead, the Commissioner applies the above procedures to determine whether the claimant's disability has ended and if she is now able to work." *Reeves v. Comm'r of Soc. Sec.*, No. 1:13-cv-325, 2014 WL 2434112, at *3 (S.D. Ohio May 29, 2014), *report and recommendation adopted*, No. 1:13-CV-00325, 2014 WL 2773258 (S.D. Ohio June 19, 2014) (citing *Kennedy v. Astrue*, 247 F. App'x 761, 764 (6th Cir. 2007)).

The ALJ found that at the time of the comparison point decision ("CPD") on December 16, 2013, Baranski suffered from the medically determinable impairment of metastatic melanoma to the lymph nodes, which met a listed impairment under the Act. (ECF No. 9-2, PageID.61). The ALJ also determined that Baranski had not engaged in substantial gainful activity since that date. (*Id.*). The ALJ concluded that medical improvement occurred on June 22, 2017, because Baranski had received treatment for her melanoma with no subsequent recurrence, and that her medical improvement was related to the ability to work because her CPD impairment no longer met or medically equaled the

4

same listed impairment at the time of the CPD.  (*Id.*, PageID.63).

The ALJ then found that, since June 22, 2017, Baranski continued to suffer from several impairments – stage III melanoma status post excision; lymphedema, status post lymph node dissection; degenerative disc disease of the lumbar spine; obesity; major depressive disorder; bipolar disorder; generalized anxiety disorder; and posttraumatic stress disorder – which, alone or in combination, did not meet or medically equal a listed impairment.  (*Id.*, PageID.61-63).

Based on the impairments present since June 22, 2017, the ALJ assessed Baranski's RFC, concluding that she is capable of performing light work, with the following additional limitations:

> [S]he can lift and carry ten pounds frequently and twenty pounds occasionally.  She can stand or walk for two hours in an eight-hour workday and sit for six hours in an eight-hour workday.  The claimant can push or pull within the aforementioned weight restrictions.  She can occasionally operate foot controls with the right lower extremity.  She can occasionally climb, balance, stoop, kneel, crouch, or crawl.  She can occasionally have exposure to unprotected heights or moving mechanical parts.  [She] can carry out simple instructions.

(*Id.*, PageID.63-64).  The ALJ next found that Baranski had not been able to perform past relevant work since June 22, 2017, but, citing the VE's testimony, found that she is capable of performing a significant number of jobs that exist in the national economy, including hand packer (55,000 jobs nationally), assembler (60,000 jobs), and inspector (43,000 jobs). (*Id.*, PageID.68-69).  As a result, the ALJ determined that Baranski's disability ended on June 22, 2017, and since then, she has not become disabled under the Act.  (*Id.*, PageID.69).

### C.   Standard of Review

The District Court has jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g).  Judicial review under this statute is limited in that the court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005) (internal citations omitted).  The phrase "substantial evidence" is a "term of art …." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (internal citations omitted).  "Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains 'sufficien[t] evidence' to support the agency's factual determinations." *Id*. (internal citations omitted). "And whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high.  Substantial evidence …  is 'more than a mere scintilla.'" *Id.* (internal citations omitted).  Specifically, "[i]t means – and means only – 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* (internal citations omitted).

When reviewing the Commissioner's factual findings, the court is limited to an examination of the record and must consider the record as a whole.  *See Bass v. McMahon*, 499 F.3d 506, 512-13 (6th Cir. 2007); *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992).  The court "may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council," or in this case, the ALJ.  *Heston*, 245 F.3d at 535; *Walker v. Sec'y of Health & Human Servs.*, 884 F.2d 241, 245 (6th Cir. 1989).

There is no requirement, however, that either the ALJ or this court discuss every piece of evidence in the administrative record. *See Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 508 (6th Cir. 2006) ("[A]n ALJ can consider all evidence without directly addressing in his written decision every piece of evidence submitted by a party.") (internal quotations omitted). If the Commissioner's decision is supported by substantial evidence, "it must be affirmed even if the reviewing court would decide the matter differently and even if substantial evidence also supports the opposite conclusion." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (citations omitted).

### D. Analysis

In her motion, Baranski raises only one argument – namely, that ALJ Mattia's RFC determination is not supported by substantial evidence because he failed to properly incorporate "the opinion of internal medicine consultative examiner Dr. Harold Nims, D.O." regarding her lymphedema, despite finding the opinion persuasive. (ECF No. 11, PageID.1416-17).

On June 8, 2017, Dr. Nims conducted an internal medicine examination, during which he opined that:

> [Baranski] has significant lymphedema from the right foot to the right thigh, ***requiring treatment with a lymphedema pump and elevation of the right leg whenever possible.*** She has some limited motion in the right knee and some decrease in lumbar spine motion and has difficulty with squatting and bending. [Her] ability to perform work-related activities such as bending, stooping, lifting, walking, crawling, squatting, carrying, and traveling as well as pushing and pulling heavy objects is at least mildly impaired due to the objective findings described above.

(ECF No. 9-9, PageID.646-47) (emphasis added). The ALJ found the opinion persuasive,

7

reasoning as follows:

> Dr. Nims said that the claimant required lymphedema treatment whenever possible and she had difficulty bending and squatting. According to Dr. Nims, the claimant had at least mildly impaired ability to bend, stoop, lift, walk, crawl, squat, carry, and push and pull heavy objects.  I find Dr. Nims' opinion persuasive.  While his conclusions were relatively vague, the exam findings and evidence as a whole confirm that the claimant's conditions limited the work functions that Dr. Nims enumerated.

(ECF No. 9-2, PageID.66) (citations omitted).

Based on the above, Baranski argues that "the ALJ's assertion that Dr. Nims['] report was persuasive is inconsistent with the assigned [RFC] because it does not account for the need to elevate the right lower extremity to any height or for any interval of time throughout the day, despite the assertion that the claimant should engage these activities 'whenever possible.'"  (ECF No. 11, PageID.1417).  She contends that this "is not a harmless error" because if she were "found to require the ability to elevate the right lower extremity to either waist or heart level on a regular basis throughout the work day (as the record overwhelmingly suggests)," such a finding would "direct a finding of disability." (*Id.*, PageID.1417-18).

The Commissioner responds that Baranski "failed to show that [Dr. Nims'] opinion set forth definitive limitations that were inconsistent with the RFC finding," as his "vague statement" that she should "elevate her right leg <u>whenever possible</u> [] failed to indicate the frequency or length of time she should do so."  (ECF No. 14, PageID.1434-35) (emphasis in original).  The Commissioner further contends that Baranski "has failed to demonstrate that any leg elevation could not be performed during normal work breaks as Dr. Nims states

it should be done whenever possible," so "even if the doctor's recommendations were adopted," she failed to show that "they would preclude all work." (*Id.*, PageID.1436-37).

Here, though Baranski asserts that "the record overwhelmingly suggests" that she was required to "elevate the right lower extremity to either waist or heart level on a regular basis throughout the work day" (ECF No. 11, PageID.1417-18), she cites to *no medical evidence* in the record supporting her conclusory assertion that she was specifically required to elevate her legs *on a regular basis throughout the workday*, much less required to elevate them *at waist or heart level*. Rather, this assertion appears to be entirely based on her own subjective reports and testimony that she spends most of the day lying on the couch and elevating her legs above heart level. (*See, e.g.*, ECF No. 9-2, PageID.83, 93, 109). However, after expressly considering her subjective complaints and testimony, the ALJ found that Baranski's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the objective medical and other evidence," and Baranski failed to challenge that finding. (ECF No. 9-2, PageID.64, 67); *see Kennedy v. Comm'r of Soc. Sec.*, 87 F. App'x 464, 466 (6th Cir. 2003) (undeveloped claims are waived).

Otherwise, Baranski primarily relies on Dr. Nims' opinion to fault the ALJ for not incorporating into the RFC "the need to elevate the lower extremity *to any height* or *for any interval of time throughout the day*," but Dr. Nims' opinion itself does not provide such specific requirements. (ECF No. 14, PageID.1434-35) (emphasis added); (*see* ECF No. 9-9, PageID.646-47). While she insists that Dr. Nims opined she should elevate "whenever possible," it does not logically follow that a recommendation to do so

"whenever *possible*" means that she *must regularly do so during the course of an eight-hour workday*.  Indeed, such an interpretation is unsupported by Dr. Nims' concurrent examinations indicating findings that Baranski was only "mildly impaired" in her ability to perform physical work-related functions, she had normal straight leg raising tests in both legs at both the supine and seated positions, she could ambulate on heels, toes, and in tandem, she had a "stable" gait within "normal" limits, she appeared "stable" in the standing, sitting, and supine positions, she "denie[d] any problem with sitting," and there was no "clinical evidence support[ing] the need for a walking aid" (even to "Reduce Pain"). (ECF No. 9-9, PageID.643-44, 648-49).

Rather, Dr. Nims' opinion is consistent with the VE's testimony that it would be "acceptable" – or in other words, *possible* – for Baranski to regularly elevate her legs (even up to waist or heart level) "during work breaks and lunch periods" without this precluding her ability to work.  (ECF No. 9-2, PageID.110).  Notably, Baranski fails to address the Commissioner's argument on this point at all, much less cite to any medical evidence indicating that elevation of her legs during regular work breaks and lunch would be insufficient.  Thus, Baranski has failed to identify anything in the record to suggest that the ALJ's RFC finding did not properly account for, or is inconsistent with, Dr. Nims' opinion.

Moreover, even under Baranski's interpretation of Dr. Nims' opinion, her challenge to the ALJ's incorporation of some (but not all) of Dr. Nims' opined restrictions fails to show harmful error, as there is nothing erroneous about incorporating into the RFC only the portions of an opinion that are consistent with the medical record evidence.  *See Reeves v. Comm'r of Soc. Sec.*, 618 F. App'x. 267, 275 (6th Cir. 2015) (stating that, even where an

ALJ provides "great weight" to a medical opinion, there is no requirement that an ALJ adopt the opinion "verbatim" or adopt opined limitations "wholesale").  Baranski's faulty contention that Dr. Nims' opinion is "consistent with the [June 2017] opinion of the Plaintiff's treating oncologist, Dr. Christopher Lao" actually amplifies this point.  (ECF No. 11, PageID.1417).  Specifically, in a Michigan Medicine letter dated June 27, 2017, Dr. Lao opined that Baranski "will intermittently need to elevate her leg to obtain optimal control of the lymphedema, as well as adhere to the other suggestions set forth by the lymphedema clinic."  (ECF No. 9-9, PageID.652).

In finding Dr. Lao's opinion unpersuasive, the ALJ explained:

> I find Dr. Lao's opinion unpersuasive.  While he treated the claimant, explained his findings, and the evidence showed intermittent lymphedema, Dr. Lao did not specify which leg would need to be elevated or the frequency or duration of the elevation.  ***To the extent that Dr. Lao's assessment suggests that the claimant would need to elevate her leg to a degree that would preclude standing and walking for two hours, the treatment notes fail to document such frequency and severity of lymphedema.***

(ECF No. 9-2, PageID.66) (emphasis added).[1]  This assessment of Dr. Lao's opinion makes clear that the ALJ considered – and expressly rejected as unsupported by medical evidence – an opinion that Baranski's lymphedema was so severe that it required a level of leg-elevation treatment precluding her from work.  The same reasoning would clearly apply to Dr. Nims' opinion, which, as detailed above, was based on exam findings indicating only "mild" impairments in Baranski's ability to physically perform work-related functions, as

---

[1] Baranski does not challenge the ALJ's evaluation of Dr. Lao's opinion.  *See Kennedy*, 87 F. App'x at 466 (undeveloped claims are waived).

well as a normal gait, ambulation, and straight leg raise tests in both supine and seated positions.  (ECF No. 9-2, PageID.66; ECF No. 9-9, PageID.643-44, 648-49).[2]

Finally, as the Commissioner points out, Baranski otherwise "failed to directly refute the ALJ's analysis" of the "medical evidence regarding Plaintiff's lymphedema." (ECF No. 14, PageID.1433-34); *see Kennedy*, 87 F. App'x at 466; *McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997) ("Issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived.  It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the courts to . . . put flesh on its bones.").  For instance, her motion does not even mention (much less challenge) the ALJ's reliance on the opinion of state agency medical consultant David Mika, D.O., who accounted for Baranski's "major problem of [] diffuse swelling of the right leg which impedes standing," but still opined that she could lift or carry 20 pounds occasionally and 10 pounds frequently, stand and/or walk for a total of 4 hours and sit for a total of 6 hours in an 8-hour workday, could frequently push or pull with the right lower extremity, and could occasionally climb ramps, stairs, ladders, ropes, and scaffolds, balance, stoop/bend, kneel, crouch, and crawl, but must avoid concentrated exposure of

---

[2] Based on the above, Baranski's reliance on the VE's testimony is misguided for at least two reasons.  (ECF No. 11, PageID.1418 ("per [the VE's] testimony . . . the ability to elevate one's foot at waist level or above would typically be 'work preclusive' due to an inability to 'perform the essential duties of the job.'")).  First, though the VE testified that the ability to elevate one's foot at waist or heart level would "typically [be] work preclusive, primarily because it's difficult to reach a work table or a work station with your leg elevated to that level" (ECF No. 9-2, PageID.109), as discussed above, Baranski failed to cite to any objective medical evidence specifically indicating that she was required to elevate her leg to waist or heart level.  Second, even assuming she was required to do so, the VE further testified that elevation at waist or heart level "during work breaks and lunch periods [] would be acceptable."  (*Id.*, PageID.109-10).

hazards with lymphedema of the right leg.  (ECF No. 9-3, PageID.127-29).  This opinion provides substantial evidence supporting the ALJ's ***more restrictive RFC*** limiting Baranski to standing/walking for two hours in workday (instead of four), and occasionally operating foot controls with her right lower extremity (instead of frequently).  (ECF No. 9-2, PageID.64, 67).

Moreover, the record reflects that the ALJ considered Baranski's "chronic lymphedema of the right leg," "continued [manual] therapy for [ongoing] lymphedema," "edema" and "increased swelling" of her lower right extremity, and "related treatment[s]" via "compression stocking, [] lymphedema pump, and elevat[ion] [of] her right leg" (ECF No. 9-2, PageID.65-66), but determined that, while her "residual lymphedema requir[ed] ongoing treatment," physical exams between June 2017 and January 2019 consistently reflected that "such condition was largely stable" and demonstrated "normal gait and balance," as well as "generally normal strength and ambulation" (*Id.*, PageID.65-67; *see, e.g.*, ECF No. 9-10, PageID.678-79, 682, 691, 694, 698, 701; ECF No. 9-14, PageID.1169-73, 1193, 1197, 1203-04).[3]  While Baranski may take issue with the ALJ's conclusions as to the severity of her lymphedema, this Court's role is not to second-guess the ALJ's evaluation of the conflicting evidence but, rather, to determine whether it clears the

---

[3] In her reply brief, Baranski asserts that "the argument the Commissioner raises that the hearing testimony was inconsistent with the medical record as it relates to Plaintiff's ability to sit or stand for a few minutes is irrelevant.  The length of time that Plaintiff can sit or stand is not at issue, rather it is the need to elevate the right lower extremity."  (ECF No. 15, PageID.1440).  This assertion is misguided, as the extent to which she requires elevation of her right leg would reflect the severity of her lymphedema and directly bear on the amount of time she could stand/sit for a continuous period in a workday based on the frequency of breaks she needed to elevate her legs.

substantial evidence bar, which the Supreme Court has characterized as "not high." *Biestek*, 139 S. Ct. at 1154. Based on all of the above, the ALJ's decision in this case clears that bar.

In sum, the law provides that if the Commissioner's decision is supported by substantial evidence, "it must be affirmed even if the reviewing court would decide the matter differently and even if substantial evidence also supports the opposite conclusion." *Cutlip*, 25 F.3d at 286 (citations omitted). Here, the ALJ properly accounted for Dr. Nims' opinion, and Baranski's evidence is otherwise insufficient to detract from the substantial evidence in the record that supports the ALJ's RFC finding.

## III.    CONCLUSION

For the foregoing reasons, the Court **RECOMMENDS** that the Commissioner's Motion for Summary Judgment **(ECF No. 14)** be **GRANTED**, Baranski's Motion for Summary Judgment **(ECF No. 11)** be **DENIED**, and the ALJ's decision be **AFFRIMED**.

Dated: December 13, 2021                     s/David R. Grand
Ann Arbor, Michigan                          DAVID R. GRAND
                                             United States Magistrate Judge

## <u>NOTICE TO THE PARTIES REGARDING OBJECTIONS</u>

Within 14 days after being served with a copy of this Report and Recommendation, any party may serve and file specific written objections to the proposed findings and recommendations set forth above. *See* 28 U.S.C. §636(b)(1); Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d)(1). Failure to timely file objections constitutes a waiver of any further

right of appeal.  *See Thomas v. Arn*, 474 U.S. 140, (1985); *United States v. Sullivan,* 431 F.3d 976, 984 (6th Cir. 2005).   Only specific objections to this Report and Recommendation will be preserved for the Court's appellate review; raising some objections but not others will not preserve all objections a party may have.  *See Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987); *see also Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596-97 (6th Cir. 2006).  Copies of any objections must be served upon the Magistrate Judge.  *See* E.D. Mich. LR 72.1(d)(2).

A party may respond to another party's objections within 14 days after being served with a copy.  *See* Fed. R. Civ. P. 72(b)(2); 28 U.S.C. §636(b)(1).  Any such response should be concise, and should address specifically, and in the same order raised, each issue presented in the objections.

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on December 13, 2021.

s/Eddrey O. Butts
EDDREY O. BUTTS
Case Manager